2

United States District Court
Southern District of Texas
FILED

JUL 3 1 2000

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DONALD MORIN, ET AL      {

     {     CIVIL ACTION NO. B-00-105

V.      {

     {     **(ORAL HEARING IS REQUESTED)**

CITY OF HARLINGEN, ET AL      {

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(6)

TOM LOCKHART
Federal ID No. 2257
Texas State Bar No. 12473500
ROGER W. HUGHES
Federal ID No. 5950
Texas State Bar No. 10229500
P. O. Drawer 1429
Harlingen, TX 78551-1429
956/428-7495; FAX: 956/428-2954
Attorney-in-Charge for Defendants,

CITY OF HARLINGEN, R. D. MOORE,
JOSEPH VASQUEZ and JIM SCHEOPNER

WALTER PASSMORE
Federal ID No. 2264
Texas State Bar No. 15560400
PASSMORE, WALKER & TWENHAFEL, LLP
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; Fax: 956/686-1276

Attorney for Defendants, R.D. MOORE, and
JIM SCHEOPNER, In Their Individual Capacity

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.  Statement of Nature and Stage of the Proceedings . . . . . . . . . . . . . . . . . .  1

II.  Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

     A.    Plaintiffs' Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

IV.  Amended Complaint Fails to State Claims Under 4th and 14th Amendments . .  3

     A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

     B.    No Fourth Amendment Claim Absent
             A "Seizure" by Government Officers . . . . . . . . . . . . . . . . . . . . .  4

     C.    Supreme Court and Fifth Circuit Have Not
             Extended Due Process to Require Defendants
             Prevent Harm By A Private Citizen . . . . . . . . . . . . . . . . . . . . .  5

     D.    Complaint Fails to State Facts Showing Defendants
             Put Plaintiffs In A Dangerous Environment
             and Stripped Them of the Ability to Defend Themselves . . . . . . . .  6

          1.    Defendants Did Not Force Deceaseds into Harm's Way
                  While Impairing Their Ability to Protect Themselves . . . . . .  7

          2.    Defendants Did Not Create A Risk Of
                  Third Party Crime That Did Not Already Exist . . . . . . . . . .  8

          3.    Defendants Did Not Know Of Any
                  Immediate Danger Facing A Known Victim . . . . . . . . . . . .  10

V.  State Law Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

# INDEX OF AUTHORITIES

Cites:                                                                    Page

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 3

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Brower v. Inyo*, 489 U.S. 593 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*County of Sacramento v. Lewis*, 523 U.S. 833,
    118 S.Ct. 1708, 1716 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*DeShaney v. Winnebago County Dept. of Soc. Serv.*,
    489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) . . . . . . . . . . . . . 2, 5, 6

*DiJoseph v. City of Philadelphia*, 953 F.Supp. 602
    (E.D. PA, 1997), aff'd., 156 F3d 1224 (3rd Cir. 1998) . . . . . . . . . . . . . . 9

*Doe v. Hillsboro ISD*, 113 F.3d 1412 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . 6, 7

*Estate of Brown v. Barian*, 43 F.Supp.2d 1008 (E.D.Wisc. 1999) . . . . . . . . . . . . 8

*Graham v. Connor*, 490 U.S. 396 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992) . . . . . . . . . . . . . . . . . 3

*Johnson v. Dallas ISD*, 38 F.3d 198
    (5th Cir. 1994), *cert. denied*, 514 U.S. 1017 (1995) . . . . . . . . . . . . . . . 6-8

*Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1997) . . . . . . . . . . . . . . 7

*Kennedy v. Baird*, 682 S.W.2d 377
    (Tex. App.- El Paso 1984, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Landol-Rivera v. Cruz*, 906 F.2d 791 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . 4

*Lefall v. Dallas ISD*, 28 F.3d 521 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 6, 8

CutePDF - www.tasisa.com

*Losinski v. City of Trempealeau,*
    946 F.2d 544 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mark v. Borough of Hatboro,* 51 F.3d 1137 (3rd Cir. 1995), *cert denied,*
    516 U.S. 858 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521 (5th Cir. 1996) . . . . . . 3

*Medeiros v. O'Connell,* 150 F.3d 164 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . 5

*Nat'l Convenience Stores v. T.T. Barge Cleaning Co.,*
    883 S.W.2d 684 (Tex.App.-Texarkana 1994, writ denied) . . . . . . . . . . . . 11

*Petta v. Rivera,* 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Randolph v. Cervantes,* 130 F.3d 727 (5th Cir. 1997)
    *cert. denied* 525 U.S. 822 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

*Saenz v. Heldenfels Bros., Inc.,* 183 F.3d 389
    at 392 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Salinas v. Gen'l Motors Corp.,* 857 S.W.2d 944
    (Tex.App.-Houston [1st Dist.] 1993, no writ) . . . . . . . . . . . . . . . . . . . 11

*Sanchez v. Figueroa,* 996 F.Supp. 143 (D.C.Puerto Rico 1998) . . . . . . . . . . . . . . 5

*Schaefer v. Goch,* 153 F.3d 793 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wofford v. Blomquist,* 865 S.W.2d 612
    (Tex.App.-Corpus Christi 1993, writ denied) . . . . . . . . . . . . . . . . . . . 11

<u>Statutes:</u>

    42 U.S.C., § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4


<u>Texas Civil Practices & Remedies Code:</u>

    Chapt. 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure:

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

United States Constitution:

4th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5
14th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-5

𝒵

United States District Court
Southern District of Texas
FILED

**JUL 3 1 2000**

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DONALD MORIN, ET AL | { | |
| | { | CIVIL ACTION NO. B-00-105 |
| V. | { | |
| | { | **(ORAL HEARING IS REQUESTED)** |
| CITY OF HARLINGEN, ET AL | { | |

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT UNDER FRCP 12(b)(6)

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants CITY OF HARLINGEN, TEXAS, R.D. MOORE, JOSEPH VASQUEZ and JIM SCHEOPNER, and file this their **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FRCP 12(b)(6)** and would show the Court as follows:

I. Statement of Nature and Stage of the Proceedings

The Morins sue for the wrongful deaths of Margarita Flores and Delia Morin under (1) 42 U.S.C., § 1983 and (2) the Texas Tort Claims Act (Tex. Civ. Prac. & Rem. Code, Chapt. 101). Plaintiffs allege that Ernest Moore shot Mrs. Flores and Ms. Morin using an AK-47 rifle privately owned by Defendant Moore, a Harlingen Police Department ("HPD") Officer.

Defendants Harlingen, Scheopner, Vasquez and Moore move to dismiss all claims under Fed.R.Civ.P. 12(b)(6).

1

## II. Statement of the Issues

1.    Whether the Complaint pleads any exception to the holding in *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that the 14th Amendment's Due Process Clause does not impose a duty on public officials to prevent a third party from injuring Plaintiffs.

2.    Whether an exception exists to *DeShaney* for a risk of harm of criminal violence by a private citizen allegedly created by the Defendants if (1) they did not force the deceased persons to encounter the danger, or (2) they did not remove the deceaseds' ability to protect themselves or escape the risk.

3.    Whether Defendants had a duty under state law (1) to safeguard personal property owned by police officers in order to prevent a third party from taking it and using it to harm other persons, or (2) to refrain selling property to others who may not safeguard the property.

## III. Background

### A.    Plaintiffs' Allegations

Plaintiffs allege that Defendant Vasquez purchased an AK-47 rifle.  Complaint, ¶ 15.  Vasquez sold that rifle to Defendant Moore.  Complaint, ¶ 15.  Plaintiffs allege that Defendant Scheopner allowed Defendant Moore to keep the AK-47 and allowed him to store it at home as a "service weapon."  Complaint, ¶ 15.

Plaintiffs allege that Defendant Moore was not trained on or proficient in the use of an AK-47 rifle.  Complaint, ¶ 15.  They allege that, because he kept the rifle at home

2

in a gun safe in the bedroom of his son (Ernest Moore), his son had access to it. Complaint, ¶ 15, 21, 24, 25.  They allege that Ernest Moore was unstable, a cocaine user, and under medication.  Complaint, ¶ 16 (7).

They allege that on July 7, 1998, Ernest Moore went to Margarita Flores' house to search for his ex-girlfriend, Ms. Julie Cox.  Complaint, ¶ 15.  As he was forcibly removing her from the house, a confrontation occurred during which Ernest Moore shot to death Margarita Flores and Delia Morin, using the AK-47 rifle.  Complaint, ¶ 15.

Plaintiffs allege that this conduct violated the 4th and 14th Amendments, U.S. Constitution.  Complaint, ¶ 13.

IV.  Amended Complaint Fails to State Claims Under 4th and 14th Amendments

A.    Standard of Review

Under Rule 12(b)(6), the court must accept the allegations as true and must view them in the light most favorable to plaintiffs, drawing all reasonable inferences in favor of the pleader.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Dismissal under Rule 12(b)(6) is correct when it appears that no relief can be granted under any set of facts that could be proven consistent with the allegations.  *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996).  However, the Complaint must state facts, not conclusions, to survive a Rule 12(b)(6) challenge.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

B.      No Fourth Amendment Claim Absent
        A "Seizure" by Government Officers

42 USC § 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490

U.S. 396, 393 (1989).  The first inquiry is to isolate the precise provision of the federal

Constitution that is allegedly infringed. *Graham*, 490 U.S. at 394.  The 4th Amendment

applies when the alleged use of excessive force arises from a search or seizure of the

person. *Graham*, 490 U.S. at 394; *County of Sacramento v. Lewis*, 523 U.S. 833, 118

S.Ct. 1708, 1716 (1998).  A "seizure" occurs only when government agents deliberately

cause the termination of an individual's freedom through means intentionally applied to

that individual. *Lewis, Id.* at 115; *Brower v. Inyo*, 489 U.S. 593, 596-597 (1989).  If the

Complaint does not show a "seizure" under the 4th Amendment, then an "excessive force"

claim can be sustained only under a 14th Amendment "Substantive Due Process" analysis.

*Lewis*, 118 S.Ct. at 1715-1716; *Petta v. Rivera*, 143 F.3d 895, 910-911 (5th Cir. 1998).

In *Lewis*, the Supreme Court made it clear that a 4th Amendment "seizure"

occurred only when the government caused an intended termination of freedom of

movement through means intentionally applied to that individual.  118 S.Ct. at 1715

(instigating chase of motorcycle on which plaintiff was a passenger was not a 4th

Amendment "seizure").  Consequently, unintended injuries to bystanders or hostages

during an arrest are not a "seizure" under the 4th Amendment. *Lewis*, 118 S.Ct. at 1715;

*Landol-Rivera v. Cruz*, 906 F.2d 791, 795-96 (1st Cir. 1990) (police officer who

inadvertently shot hostages while aiming to hit the kidnapper did not "seize" hostage for

4

4th Amendment purposes); *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir. 1998) (accidental shooting of the wife held hostage by her husband was not a "seizure" under 4th Amendment, even though police officers had surrounded their house and instructed the wife to "get down").  Likewise, there is no 4th Amendment claim when the force is not directed deliberately at the plaintiff.  *Petta*, 143 F.3d at 901; *Medeiros v. O'Connell*, 150 F.3d 164, 168 (2nd Cir. 1998); *Sanchez v. Figueroa*, 996 F.Supp. 143, 1476 (D.C.Puerto Rico 1998).

Here, Plaintiffs have no 4th Amendment claim against Defendants, because the Complaint does not allege they "seized" Margarita Flores or Delia Morin.  Unintended injuries to bystanders do not constitute a "seizure" under the 4th Amendment.  *Lewis,* 118 S.Ct. at 1715.  There is no "seizure" when the defendant does not deliberately direct any force at the plaintiff.  *Petta*, 143 F.3d at 901;  *Medeiros*, 150 F.3d at 168.

C.   Supreme Court and Fifth Circuit Have Not
     Extended Due Process to Require Defendants
     Prevent Harm By A Private Citizen

Neither the U.S. Supreme Court nor the Fifth Circuit has recognized this as a valid exception to *DeShaney*; the Supreme Court has strongly indicated it will not recognize the exception.  Even if the exception became law later, Plaintiffs' claims do not fit within it.

In *DeShaney*, the Supreme Court plainly stated that the 14th Amendment's Due Process Clause was triggered only by affirmative government action and put no duty on government officials to act to prevent a third party from harming the claimant.  489 U.S. at 196-197, 109 S.Ct. at 1004.  The court neither approved nor disapproved of a rule

5

imposing liability if the State created the risk of harm to which it forced the claimant to suffer, i.e., an exception for "stated-created" danger. *Id.*

Though often asked to do so, the Fifth Circuit has consistently declined to adopt the "state-created danger" rule. *Randolph v. Cervantes*, 130 F.3d 727, 731 (5th Cir. 1997), *cert. denied*, 525 U.S. 822 (1998); *Doe v. Hillsboro ISD*, 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc); *Johnson v. Dallas ISD*, 38 F.3d 198, 201 (5th Cir. 1994), *cert. denied*, 514 U.S. 1017 (1995). The Fifth Circuit has cast doubt on whether it is a viable exception to *DeShaney*. *Lefall v. Dallas ISD*, 28 F.3d 521, 530 (5th Cir. 1994). The Supreme Court stated that the rationale for any exception is that the state exercises its authority to restrain the individual's liberty so as to render him unable to protect himself. *DeShaney*, 489 U.S. at 200. In *Johnson*, the Court questioned whether it could ever meet the "demanding standard for constitutional liability." 38 F.3d at 201.

D.   Complaint Fails to State Facts Showing Defendants
     Put Plaintiffs In A Dangerous Environment
     and Stripped Them of the Ability to Defend Themselves

Though the Fifth Circuit has declined to adopt the "state-created danger" rule, it has described its elements as:

1.   The government officials must create the dangerous situation;

2.   They must know the situation is dangerous;

3.   The danger must create an opportunity for a third party to commit a crime which would not otherwise exist; and

4.   They must affirmatively place the plaintiff in a position of danger in such a way as to strip the plaintiff of his ability for self defense.

6

*Randolph*, 130 F.3d at 731; *Johnson*, 38 F.3d at 201. The officials' actions must place the plaintiff at a specific risk, as opposed to a risk that affects only the public generally. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1997); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1153 (3rd Cir. 1995), *cert denied*, 516 U.S. 858 (1995). The official must have actual knowledge that the risk of harm exists. *Doe*, 113 F.3d at 1415.

1. **Defendants Did Not Force Deceaseds into Harm's Way While Impairing Their Ability to Protect Themselves**

Plaintiffs allege nothing that would suggest that Defendants (1) forced Mrs. Flores and Ms. Morin to confront Ernest Moore, or (2) took from them any means of self-defense or escape. The Complaint, ¶ 15, claims Ernest went to the Morin residence in a jealous rage to find his former girlfriend, Ms. Cox. Defendants did not send Ernest to the Morin household; they did not cause the Morins to be present when he argued with Ms. Cox.

Likewise, there is nothing to suggest that Defendants did anything to impair the ability of Mrs. Flores and Ms. Morin to escape or defend themselves. There is no allegation that Defendants knew or even suspected that Ernest would either confront Ms. Cox or shoot them. If the Defendants did not know the Morins were in danger, they could not warn them, much less block the deceaseds' escape or prevent others from helping. There is nothing to suggest that, once Ernest Moore arrived, Mrs. Flores and Ms. Morin were not able to leave, summon help, or take other precautions for their own safety.

7

2.    Defendants Did Not Create A Risk Of
      Third Party Crime That Did Not Already Exist

The pleadings must show Defendants had created the opportunity for a third party's crime that otherwise would not have existed. *Randolph*, 130 F.3d at 731; *Johnson*, 38 F.3d at 201.   Therefore, the Morins must plead facts showing that Defendants were actually aware they had created an extreme risk that a private citizen would use the rifle to shoot Margarita Flores and Delia Morin. *Johnson*, 38 F.3d at 201-2; *Lefall*, 28 F.3d at 531.

The Complaint alleges nothing to show that Defendants incited Ernest Moore to take Defendant Moore's rifle or fire on the Morins.   The pleading states no facts showing that, unless Ernest Moore seized his father's, no gunfire would have erupted.   If R.D. Moore did not own the AK-47, that might have prevented Ernest Moore from using that specific rifle.   However, that is not the same thing as creating an opportunity to commit these crimes which Ernest would not have had otherwise.   Failing to prevent a crime is not the same thing as causing it. *Estate of Brown v. Barian*, 43 F.Supp.2d 1008, 1019 (E.D.Wisc. 1999).

Any alleged knowledge that Ernest Moore might be dangerous or likely to harm people does not create the risk of harm. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 700 (9th Cir. 1990); *Losinski v. City of Trempealeau*, 946 F.2d 544, 551 (7th Cir. 1991).

8

Finally, Defendants did not knowingly create a dangerous situation by simply allowing R.D. Moore to continue to possess his own rifle. *Compare, DiJoseph v. City of Philadelphia*, 953 F.Supp. 602 (E.D. PA, 1997), aff'd., 156 F.3d 1224 (3rd Cir. 1998).

In *DiJoseph*, police officers responded to a robbery complaint at the DiJoseph residence, where they encountered Mr. DiJoseph. 953 F.Supp. at 604. DiJoseph had a gun, which the officers took from him. *Id.* Mr. DiJospeh appeared to be anxious and upset; the officers learned that DiJoseph suffered from psychological problems, was on medication and had been acting "paranoid" after someone had stolen his car. *Id.* However, he also had a lawful permit for the gun. The officers returned to DiJoseph his gun. *Id.* Shortly, afterwards, the police received a call that DiJoseph was holding people hostage at his house. When the police officers arrived, a shooting erupted and DiJoseph was shot. *Id.*

Mr. DiJoseph filed a "state created" danger claim that the officer should not have returned the gun to him. *Id.* at 605. The district court granted summary judgment dismissing that theory. *Id.* at 614. The court concluded that, although it might have been dangerous to return the weapon to Mr. DiJoseph, the officers did not use their authority to create an opportunity for harm that would have not otherwise existed. *Id.* at 613-14. Because it was not obvious that returning the weapon to DiJoseph would lead to the police officers returning to his house and becoming involved in a shooting, the officers did not create a situation of danger or make DiJoseph more vulnerable to it. *Id.*

9

Here, there is nothing in these pleadings to show that allowing Vasquez to buy an AK-47 rifle and sell it to Defendant Moore would lead to Ernest Moore taking the rifle and shooting bystanders during an argument with his former girlfriend. If this is sufficient to prove the officers intentionally created this risk of harm, then the city is responsible for every injury involving any weapon owned by any employee.

3.    Defendants Did Not Know Of Any
      Immediate Danger Facing A Known Victim

The "state created danger" doctrine will not apply where the government actor is not aware of any immediate danger facing a known victim. *Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389 at 392 (5th Cir. 1999). There, the Fifth Circuit clearly stated that the "state created danger" theory is inapposite without a known victim. *Id.* at 392.

In *Saenz*, the Fifth Circuit upheld summary judgment in favor of two sheriff's deputies who declined to arrest an obviously drunk driver. 183 F.3d at 390. About 15 minutes after the deputies declined to arrest him, the drunk driver had an accident causing two fatalities. *Id.* The Fifth Circuit affirmed, holding there was no Due Process violation for increasing the risk of harm to unidentifiable members of the public. *Id.* at 391.

Here, there is no allegation Defendants even knew the Morins existed, much less knew they were at home and in any danger. Plaintiffs allege no facts showing the Defendants knew or suspected that Ernest Moore would seek out Ms. Cox at their house, an argument would erupt, and Ernest would start shooting.

10

## V.  State Law Claims

Plaintiffs allege only a negligence claim against Defendants.  They rely on a theory that (1) Defendant Vasquez negligently sold the rifle to Defendant Moore, (2) who then stored it in a way that allowed Ernest to take it.   There is no claim R.D. Moore deliberately gave his son the rifle.

First, Texas cases have held that negligent entrustment of a firearm to an incompetent user may actionable.  *Kennedy v. Baird*, 682 S.W.2d 377, 388 (Tex. App.-El Paso 1984, no writ).  However, *Kennedy* does not state that there can be liability for failing to prevent the weapon from being taken without permission.

Second, there is no tort for negligently transferring ownership of personal property analogous to negligent entrustment.   No cause of action exists for negligently selling personal property to someone who is incompetent to use it safely.  *Salinas v. Gen'l Motors Corp.*, 857 S.W.2d 944, 947-49 (Tex.App.-Houston [1st Dist.] 1993, no writ)(dealer that sold car to elderly woman who was not a competent driver, held not liable for injury she caused while driving car); *Nat'l Convenience Stores v. T.T. Barge Cleaning Co.*, 883 S.W.2d 684, 686 (Tex.App.-Texarkana 1994, writ denied); *Wofford v. Blomquist*, 865 S.W.2d 612, 614-15 (Tex.App.-Corpus Christi 1993, writ denied)(grandmother gave car as gift to grand-daughter with bad driving history, not liable resulting auto accident).  Because the AK-47 allegedly *belonged* to R.D. Moore, no one can have liability for selling it to him or allowing him to possess it.

11

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants CITY OF HARLINGEN, TEXAS, R.D. MOORE, JOSEPH VASQUEZ and JIM SCHEOPNER pray the above and foregoing be taken under submission and upon hearing same, the Court grant the relief requested, dismiss the Complaint, dismiss all or part of the claims alleged, or grant any other such further relief to which they may show themselves entitled.

12

Respectfully submitted,

By: _____
TOM LOCKHART
Federal ID No. 2257
State Bar No. 12473500
ROGER W. HUGHES
Federal ID No. 5950
State Bar No. 10229500
P. O. Drawer 1429
Harlingen, TX· 78551-1429
956/428-7495; FAX: 956/428-2954

Attorney-in-Charge for Defendants,
CITY OF HARLINGEN, R.D. MOORE,
JOSEPH VASQUEZ and JIM SCHEOPNER

WALTER PASSMORE
Federal ID No. 2264
Texas State Bar No. 15560400
PASSMORE, WALKER & TWENHAFEL, LLP
2424 North 10th St., Suite 201; 78501
P. O. Drawer 3766
McAllen, TX 78502-3766
956/687-6225; Fax: 956/686-1276

Attorney for Defendants, R.D. MOORE and
JIM SCHEOPNER, In Their Individual Capacity

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document was forwarded on this 31st day of July, 2000, to the following counsel of record and interested parties:

Attorney of record for Plaintiff, DONALD MORIN, et al:

    Mr. Jerry J. Trevino                <u>CM RRR 7099 3220 0001 0357 9638</u>
    Attorney at Law
    1125 South Port Avenue
    Corpus Christi, TX 78405

Attorney of records for Defendants SCHEOPNER and MOORE Individually:

    Mr. Walter Passmore                          <u>Regular Mail</u>
    PASSMORE, WALKER & TWENHAFEL, L.L.P.
    P. O. Drawer 3766
    McAllen, TX 78502-3766

ROGER W. HUGHES

14